UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

       BSC DEVELOPMENT BUF LLC,

               Debtor.
_____

Involuntary Chapter 11
Case No. 09-11550
Hon. Carl L. Bucki, U.S.B.J.

**MOTION OF CHAPTER 11 TRUSTEE FOR AN ORDER AUTHORIZING THE SALE AT AUCTION OF SUBSTANTIALLY ALL OF THE PERSONAL PROPERTY OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

The Chapter 11 Trustee, Morris L. Horwitz, (the "Trustee") by and through his counsel, Hodgson Russ, LLP, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves the Court for the entry of an order authorizing the sale at auction of substantially all of the Personal Property (as defined herein) of the Debtor free and clear of liens, claims and encumbrances (the "Motion"), and in support thereof respectfully represents:

**<u>Background and Jurisdiction</u>**

1.     The Debtor is a New York limited liability company that is the owner of the Statler Towers ("Statler"), a multi-tenant office building and banquet hall located at 107 Delaware Avenue, Buffalo, New York 14202.

2.     On April 13, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary chapter 11 petition against the Debtor.

3.     On April 22, 2009, the Court entered an order approving the selection of Morris L. Horwitz as Chapter 11 Trustee for the Debtor on an interim basis.

4.     On April 23, 2009 (the "Relief Date"), the Court entered an order for relief adjudicating the Debtor bankrupt and commencing this chapter 11 case.

5.    On April 23, 2009, Morris L. Horwitz was appointed as Chapter 11 Trustee on a final basis.

6.    On May 28, 2009, the Trustee filed a Motion to (A)(i) Establish Bid and Sale Procedures, Under §§ 105(a), 363(b), (f) and (m), 365, 1146(a), and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, for the Sale Free and Clear of Liens, Claims, Encumbrances and Interests of Substantially All of BSC Development Buf LLC's Assets; (ii) Scheduling a Hearing on the Approval of the Sale; (iii) Approving the Form and Manner of Notice of the Sale, and (B) Authorizing the Assumption and Assignment of Designated Contracts.  An Order to approve the bid and sale procedures was entered on June 5, 2009.

7.    On June 19, 2009, the Trustee filed its Application of Morris L. Horwitz, Chapter 11 Trustee, Authorizing the Retention and Employment of Cash Realty & Auctions LLC, ("Cash Realty") as Real Estate Agent and Auctioneer and Motion to Modify Bidding and Sale Procedures Previously Approved by the Court [docket number 152] incorporated by reference herein.  An Order to approve the employment of Cash Realty, amend the bid and sale procedures and subsequently allow Cash Realty to sell Debtor's assets at public auction was approved on June 26, 2009 ("June 26th Order").

8.    On August 12, 2009, an auction was held with respect to the Debtor's assets.  Prior to the auction, the Trustee and his professionals, including Cash Realty, extensively and appropriately marketed the real property locally, nationally and internationally, as recognized by the Court in its September 1, 2009 sale order ("Sale Order") approving the sale of the real property to New Buffalo Statler.

9.    A closing of the sale transaction was originally contemplated for August 28, 2009, but was subsequently extended at the request of New Buffalo Statler to September 28, 2009

pursuant to the Sale Order. New Buffalo Statler failed to complete the sale by September 28, 2009, and the Court further extended the closing date to November 30, 2009 by Order dated October 1, 2009.

10. New Buffalo Statler did not complete the transaction contemplated by their bid on or before November 30, 2009, the expiration of the last extension of the closing date granted pursuant to the October 1, 2009 Order.

11. Currently, there are no remaining tenants in the building. While the operating expenses consist of only the bare minimum necessary to prevent the building from being completely unprotected, unheated and uninsured, they are still a significant and burdensome amount given the substantial size of the building and the meager resources available to the Trustee.

12. The only source of funds available to the Trustee is the forfeited deposit of the August 12th bidder, to which another party, the disputed mortgagee Mamoud Al Issa, asserts a claim. Based partially on the Mortgagee's consent, the Court authorized the use of a portion of these funds to cover the operational expenses and winterization of the building. The issue of whether the forfeited deposits constitute the Mortgagee's cash collateral has not yet been determined by the Court.

13. Aside from the real property and the Statler building itself, the Debtor owns certain personal property assets, including equipment, building materials and other items listed within the attached **Exhibit A** ("Personal Property"). Despite the difficulty in finding a purchaser for the Statler building, these Personal Property assets can be auctioned now in order to prevent further depreciation, maximize their value, and provide much needed working capital for the maintenance and operation of the Statler building.

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### **Auction of Personal Property**

15.     Pursuant to § 363 of the Bankruptcy Code, the Trustee requests that the Court approve of the auction of substantially all of the Debtor's Personal Property by Cash Realty free and clear of liens, claims and encumbrances.  The Trustee, in the exercise of his business judgment, has determined that an auction of the Personal Property is a transparent process that will allow for competitive bidding, and thus, is in the best interests of the creditors and the bankruptcy estate.

16.     The decision to sell assets outside the ordinary course of business is based upon the sound business judgment of the Trustee.  *See*, *e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). *See also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993), quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).  The continued applicability of the business judgment rule in bankruptcy is thereby applicable to a trustee that is acting on the debtor's behalf.

17.     Courts generally show great deference to a debtor's or trustee's decisions when applying the business judgment standard.  *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they

Case 1-09-11550-CLB    Doc 335    Filed 03/25/10    Entered 03/25/10 16:17:22    Desc
Main Document    Page 4 of 8

have satisfied the requirements articulated in the caselaw.").  Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  *Richmond Metal Finishers*, 756 F.2d at 1047.

18.     Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the trustee has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith.  *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); accord *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 166 (D. Del. 1991); *In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).  Given that all creditors and interested parties are provided with notice and the Personal Property is to be sold at public auction, the business judgment standard has been met in this case.

19.     Cash Realty was chosen because of its estate and auctioning expertise, as well as its expertise in evaluation, appraisal, marketing and publicity.  The Trustee requires a knowledgeable agency to render these professional services in order to maximize the value of the Personal Property.  Accordingly, the Trustee believes that Cash is well qualified to act as auctioneer of the Personal Property.

20.     Cash Realty remains a disinterested party, as originally set forth in the June 19, 2009 retention application [Docket No. 152], and affirms that there has been no change in circumstances affecting the disinterestedness of Cash Realty.  A declaration by Cash Realty affirming that they remain a disinterested party is attached as **Exhibit B**.

21.     Cash Realty will market the Personal Property as follows: (i) place two Buffalo News ads two weeks prior to the auction; (ii) website advertising at www.cashauction.com and

Case 1-09-11550-CLB    Doc 335    Filed 03/25/10    Entered 03/25/10 16:17:22    Desc
Main Document    Page 5 of 8

www.auctionzip.com; (iii) distribute color oversized postcard to a targeted list of 2,000 people; and (iv) market the auction on Craigslist.

22.     The auction of the Personal Property will be held on Saturday, May 1, 2010 ("Auction Date") at 10:00 am (prevailing Eastern Time) at Cash Realty's auction facility located at 1295 Main Street, Buffalo, New York 14209.  The auctioneer, Cash Cunningham, can be contacted at 716-885-2200, fax 716-885-9162, cellular 716-523-2274, email CashCunningham@aol.com, or website at www.cashauction.com.  Therefore, prospective bidders and other interested parties will have over 30 days from the notice of this Motion to the Auction Date to perform any due diligence and reach a decision as to whether they are interested in bidding upon any of the Personal Property items.  Cash Realty's standard terms of sale are attached as **Exhibit C**.

23.     The hearing on the Motion will be the only hearing regarding the auction and sale of the Personal Property.  Once the hammer is struck for each item or lot sold at the auction, the sale is final and no further Court approval is necessary.  Pursuant to Rule 6004(f)(1), the auctioneer will provide an itemized statement of the property sold, the name of the purchaser and the price received, which statement will be filed by the Trustee with a copy served on the U.S. Trustee.

### Sale Free and Clear of Liens, Claims and Encumbrances and Finding of Good Faith

24.     The auction contemplates an arm's-length transaction between the Trustee and any successful bidders.  A purchaser's good faith may be satisfied where a sale is the product of arm's-length negotiations between parties.  *See WBQ Partnership*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) (stating that "[a] negotiation conducted at arm's length helps to ensure that the agreed price ultimately will be fair and reasonable"); *In re Apex Oil Co.*, 92 B.R. 847, 870 (Bankr. E.D. Mo. 1988).  Alternatively, lack of good faith is typically determined by actions that involve fraudulent

Case 1-09-11550-CLB    Doc 335    Filed 03/25/10    Entered 03/25/10 16:17:22    Desc
Main Document      Page 6 of 8

conduct, collusion or an attempt to take unfair advantage of other bidders during the sale proceedings. *See Willemain v. Kivitz* (*In re Willemain*), 764 F.2d 1019, 1023 (4th Cir. 1985).

25.     The auction will also ensure that any price obtained for the assets will be fair and reasonable. The competitive bidding process should enable the Trustee to capture value from the Personal Property for the benefit of the Debtor's estate and creditors by taking full advantage of the potential pool of buyers. Moreover, the proposed auction will provide transparency to the sale and make reasonably certain that any successful bid is the highest or otherwise best bid for such asset, all under the direction of the Trustee.

26.     With respect to any party possibly asserting a lien, claim, or encumbrance against the Personal Property (although none are believed to exist), the Trustee believes that they will be able to satisfy one or more of the conditions set forth in § 363(f). In particular, the Trustee believes that any lienholder will be adequately protected by having their interest, if any, attached to all proceeds ultimately attributable to the Personal Property in which such creditor alleges an interest, in the same order of priority and with the same validity, force and effect that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the Debtor's estate may have with respect thereto.

27.     Finally, the Trustee believes that creditors with any interest in the Personal Property will consent to a proposed sale free and clear of liens, claims, encumbrances and interests, if applicable. *See* 11 U.S.C. §363(f)(2). To the extent such creditors do not consent explicitly or implicitly, the Trustee believes that the sale will satisfy one or more of the factors in section 363(f).

28.     The auction will result in arm's-length, good-faith sales of the Personal Property to interested purchasers.

<u>**Notice**</u>

29.     The Trustee has served notice of the hearing on this Motion and the Auction Date and location upon the following parties: (a) the Office of the U.S. Trustee for the Western District of New York; (b) all creditors; (c) all other known parties with liens of record on assets of the Debtor as of the Petition Date; (d) all parties that have filed notices of appearance requesting service in these cases; and (e) Bashar Issa (via Fed. Ex and electronic mail).

WHEREFORE, the Trustee respectfully requests the entry of an order, substantially in the form attached as **Exhibit D** (i) authorizing the sale at auction of substantially all of the Personal Property of the Debtor, free and clear of liens, claims and encumbrances and (ii) granting such other and further relief as may be just and proper.

Dated: Buffalo, New York
      March 25, 2010

Respectfully submitted,

**HODGSON RUSS LLP**

By:    /s/  Julia S. Kreher
Garry M. Graber, Esq.
Julia S. Kreher, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 848-1273
Facsimile: (716) 819-4666
Email: GGraber@HodgsonRuss.com

*Counsel to the Chapter 11 Trustee*